# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-2675

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

PATRICK J. STEWART,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Northern District of Indiana, South Bend Division.
No. 02 CR 93—**Robert L. Miller, Jr.**, *Chief Judge.*

———————

ARGUED FEBRUARY 11, 2004—DECIDED JUNE 14, 2005

———————

Before EASTERBROOK, KANNE, and WILLIAMS, *Circuit
Judges.*

KANNE, *Circuit Judge.* A jury convicted Patrick J.
Stewart of two counts of transmitting threatening commu-
nications. Stewart appeals his conviction, claiming that the
jury instructions given by the district court on the elements
of the offense were erroneous; he also appeals his sentence,
asserting that the district court erred in its determination
of his offense level and his criminal history category under
the federal Sentencing Guidelines. For the reasons stated
herein, we affirm Stewart's conviction and sentence.

## I. History

In the late 1980s, Patrick Stewart participated in a union apprenticeship program in South Bend, Indiana. The union, Sheet Metal Workers Local 20, is an affiliate of the Sheet Metal Workers International Association ("International"), based in Washington, D.C. In 1990, before Stewart achieved journeyman status (which would have entitled him to a higher pay scale and the right to work under union contracts anywhere in the nation), he either resigned or was terminated from the program.[1] Disgruntled, Stewart launched an effort that spanned from 1990 through 2002 to become reinstated in the union and recover back wages. His crusade included a 1997 lawsuit that was dismissed. The bulk of Stewart's efforts, however, consisted of an extended series of phone calls to both Local 20 and, after 1998, to the International.

On August 27, 2002, an International receptionist answered a phone call from Stewart at approximately 4:30 P.M. Stewart asked to speak to the legal department, as he had often done previously. After the receptionist informed Stewart that the department personnel were gone for the day, Stewart asked if they would be in the office the next day. The receptionist replied in the affirmative. Stewart then said, "Well, good, because after tomorrow, the place will no longer exist," and stated that he would "blow it up." The next day, Stewart called twice. The first time, he was transferred to the legal secretary who apparently hung up. The second time, Stewart asked the receptionist to give the legal secretary a message. The receptionist testified: "He told me that he had said a prayer for her and that he called out to the living God before he was going to have someone kill her so that the Lord could have mercy on her."

---

[1] Despite submitting a letter of resignation, Stewart believes that he was wrongfully terminated from the program. Ultimately, this dispute is unimportant to our analysis of the case.

Based on these phone calls in August 2002 (and not the earlier calls to Local 20 or others), a federal grand jury returned a two-count indictment on September 11, 2002, charging Stewart with knowingly transmitting in interstate commerce a communication containing a threat to injure the person of another. *See* 18 U.S.C. § 875(c) ("Whoever transmits in interstate or foreign commerce any communication containing any threat . . . to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both."). The jury found Stewart guilty on both counts after a two-day trial.

Stewart continued to exhibit bizarre behavior after the trial. He testified at his sentencing hearing about his unqualified right to "communicate" with those whom he believes have wronged him and repeatedly referenced his "unresolved labor dispute." (Sent. Tr. at 108-09; Sent. Mem. at 5.) Stewart also allegedly sent a threatening letter to the occupants of his mother's former house one day after the verdict was returned in his trial.

Applying the 2003 version of the Sentencing Guidelines, the district court assigned 12 points for the base offense, U.S.S.G. § 2A6.1(a)(1), and added 2 points each for more than two threats, U.S.S.G. § 2A6.1(b)(2), and obstruction of justice, U.S.S.G. § 3C1.1, for a total of 16. The district judge departed upward 5 points based on the broad scope and large number of victims of Stewart's conduct prior to trial. The judge also departed upward from a Criminal History Category I to a Category IV based on Stewart's conduct during and after his trial. Based on Stewart's offense level of 21 and criminal history category of IV, the judge selected a 64-month sentence from the applicable range of 57 to 71 months. The jury instructions provided by the trial judge and the application of the Sentencing Guidelines after Stewart's conviction provide the basis for this appeal.

## II.  Analysis

### A.  Jury Instructions

Stewart alleges an error of law in the jury instructions, which we review *de novo. United States v. Hausmann*, 345 F.3d 952, 959 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 2412 (2004). The district court presented the three elements of 18 U.S.C. § 875(c) as follows:

> First, that the Defendant said or transmitted a communication in interstate commerce; second, the communication contained a threat to injure another person; and third, the Defendant *did so knowingly*.

(Tr. at 374 (emphasis added).) At trial, Stewart requested the district court to state the third element as: "The defendant did so knowingly and *with the intent to threaten*." Thus, Stewart asserts that the district court's alleged misstatement of the law constitutes reversible error.

Essentially, Stewart argues that § 875(c) should be read to incorporate a requirement that the defendant possess the "specific intent" to deliver a threat.[2] This contrasts with the district court's explanation of "knowingly," the mental state used in the jury instructions: "When the word knowingly is used in these instructions, it means that the Defendant realized what he was doing and was aware of the nature of his conduct and did not act through ignorance or mistake or accident." (Tr. at 375.) Thus, the jury did not have to find that Stewart purposefully intended his statements to be taken as threats in order to convict him.

---

[2] Stewart chose to present his argument using the traditional terminology of "specific intent" and "general intent." He might also have used the precisely defined terms of the Model Penal Code, "purposefully" and "knowingly." *See, e.g., United States v. Altier*, 91 F.3d 953, 957 (7th Cir. 1996).

Although we have not yet considered 18 U.S.C. § 875(c) in this context, our treatment of a similar statute, one that criminalizes threats sent through the mail, provides ample guidance to resolve this dispute. *See* 18 U.S.C. § 876(c).[3] "[T]here are two essential elements to prove a violation of 18 U.S.C. § 876 . . . (1) that the defendant wrote a letter addressed to a certain person containing a threat to injure the person of the addressee or of another, [and] (2) that the defendant knowingly caused the letter to be forwarded by the United States mail." *United States v. Aman*, 31 F.3d 550, 553 (7th Cir. 1994) (quoting *United States v. Khorrami*, 895 F.2d 1186, 1191 (7th Cir. 1990)).

Because statutes like 18 U.S.C. §§ 875 and 876 criminalize "pure speech," the Constitution demands that the speech involved constitute a "true threat" and not constitutionally protected speech. *See Watts v. United States*, 394 U.S. 705, 707 (1969). To establish a "true threat," the government must prove that the statement came "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [another individual]." *Khorrami*,

---

[3] **18 U.S.C. § 876(c) provides in relevant part: "Whoever knowingly [deposits in any post office or authorized depository for mail matter, to be sent or delivered by the Postal Service according to the direction thereon,] any communication with or without a name or designating mark subscribed thereto, addressed to any other person and containing any . . . threat to injure the person of the addressee or of another, shall be fined under this title or imprisoned not more than five years, or both." In 2002, Congress amended 18 U.S.C. § 876 so that each paragraph of the statute now appears in lettered subsections, but this amendment has no effect on the validity of the cases we rely on because the operative language of § 876 that is relevant to this case remains unchanged.**

895 F.2d at 1192 (quoting *United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986)) (brackets in original). Whether the letter contains a "true threat" is an objective inquiry. *Aman*, 31 F.3d at 553. In other words, guilt is not dependent upon "what the defendant intended, but whether the recipient could reasonably have regarded the defendant's statement as a threat." *Id.* (quoting *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990)).

Stewart's appeal asks us to reverse course from this approach and hold that, in addition to uttering an objective "true threat," the defendant must also subjectively intend the statement to be a threat. In assessing this argument, we see no meaningful distinction between the text of 18 U.S.C. § 875(c) and the part of 18 U.S.C. § 876 relied on in *Khorrami* and *Aman*. True, § 876(c) explicitly includes the word "knowingly" ("Whoever knowingly so deposits or causes to be delivered") and § 875(c) is silent as to the appropriate mental state ("Whoever transmits"). But we do not see, and Stewart declines to argue, how this textual difference should lead to a more strenuous mens rea requirement for § 875(c).[4]

The district court's jury instructions accurately reflect the substance of the criminal elements of 18 U.S.C. § 875(c). *Accord United States v. Whiffen*, 121 F.3d 18, 21 (1st Cir. 1997) ("This approach also protects listeners from statements that are reasonably interpreted as threats, even if the speaker lacks the subjective, specific intent to threaten, or, as would be more common, the government is unable to

---

[4] Instead of arguing that the text of the statute demands that the government prove a purposeful intent to threaten, Stewart cites a Ninth Circuit case, *United States v. Twine*, 853 F.2d 676 (9th Cir. 1988), that has been called into question by subsequent case law. We decline to adopt the Ninth Circuit's approach to 18 U.S.C. § 875(c).

prove such specific intent which, by its nature, is difficult to demonstrate."); *United States v. Darby*, 37 F.3d 1059, 1066 (4th Cir. 1994); *United States v. DeAndino*, 958 F.2d 146, 149-50 (6th Cir. 1992).

### B. Sentencing

Stewart also contested the district judge's application of the Sentencing Guidelines. Specifically, he alleged that the district court's upward departures for his offense level and criminal history category were in error.

After oral argument in this case, the Supreme Court held that mandatory application of the Guidelines is unconstitutional. *United States v. Booker*, 125 S. Ct. 738, 756 (2005). As a remedy, the Court excised those statutory provisions making the Guidelines mandatory. They are now merely advisory; judges should use their discretion and may impose a sentence outside the Guideline range so long as it is "reasonable." *See id.* at 756, 765-66. Stewart did not argue that the Guidelines were unconstitutional in the district court; on the contrary, he argued that the sentencing court erred by not following the guidelines closely enough. As a result, we review his sentence for plain error. *See id.* at 769.

Resentencing is warranted under the plain error standard if error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings," or, in other words, if it causes a "miscarriage of justice." *See Johnson v. United States*, 520 U.S. 461, 467 (1997); *United States v. Paladino*, 401 F.3d 471, 481 (7th Cir. 2005) (quotation omitted). As we stated in *Paladino*, a miscarriage of justice occurs when a sentencing judge, in having thought himself bound by the Guidelines, gives a longer sentence than he would have given had he thought himself able to exercise discretion. 401 F.3d at 482-83.

The sentencing judge in this case departed upward from the guidelines. "By moving up, the judge evince[d] not only

a belief that discretion exist[ed] but also a disposition to exercise it adversely to the accused." *United States v. Lee*, 399 F.3d 864, 867 (7th Cir. 2005). It is clear that the judge would not have given a lower sentence had the sentencing taken place post-*Booker*, so there is no plain error. *See id.* Stewart's sentence is lower than the statutory maximum, and it comports with the *Booker* reasonableness requirement. *See Booker*, 125 S. Ct. at 669. We affirm the sentence.

### III.  Conclusion

Because the district court properly stated the law in the jury instructions, we AFFIRM Stewart's conviction. Further, we AFFIRM his sentence because it does not constitute plain error under *Booker*.

WILLIAMS, *Circuit Judge*, dissenting.  Because I believe we should order a limited remand of Patrick Stewart's sentence pursuant to *United States v. Paladino*, 401 F.3d 471, 483-84 (7th Cir. 2005) to ask the sentencing judge whether he would have given a shorter sentence had he known the Guidelines were only advisory, I respectfully dissent. I concur in the determination that the jury instructions were not erroneous.

Although the sentencing judge departed upward, the judge did not sentence Stewart to the high end of the elevated Guidelines range. Nor did he make any statement indicating that he would have sentenced Stewart to a higher sentence had he known the Guidelines were merely advisory. Thus, it is not clear that the sentencing judge

would have given the same sentence had the sentencing taken place post-*Booker.*

Stewart was sentenced under the then-mandatory guidelines scheme. The sentencing judge departed upward five levels based on his finding that Stewart threatened five groups of persons, and he also increased Stewart's criminal history category from category I to category IV. In making the decision to depart upward five levels, the district court judge stated, after concluding that Stewart had threatened five different groups, "I think that an increase in offense level of one level for each of those groups is appropriate."

In addition, although Stewart's history initially placed him in criminal history category I, the district judge invoked U.S.S.G. § 4A1.3 and placed him in category IV. When Stewart was sentenced, § 4A1.3 stated in part:

> If reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the court may consider imposing a sentence departing from the otherwise applicable guideline range.

In explaining his decision to place Stewart in category IV, the judge stated, "Based on the court's experience in applying the sentencing guidelines to other offenders, the court finds that the near certainty of future threats that Mr. Stewart presents is (at best) akin to the risk posed by category IV offenders."[1]

---

[1] Stewart also contested the district court's decision to depart upward from criminal history category I to category IV. Although there may have been a basis to depart, I also question whether the district court's "experience" alone constituted adequate justification for the extent of the departure under the then-mandatory guidelines scheme, as it does not adequately explain why Stewart

(continued...)

Because Stewart did not raise a Sixth Amendment or related challenge before the district court, our review of his *Booker* challenge is for plain error. The mandatory application of the Guidelines in setting Stewart's sentence constitutes error that is plain. *See United States v. White*, 406 F.3d 827, 835 (7th Cir. 2005); *United States v. Castillo*, 406 F.3d 806, 823 (7th Cir. 2005). Furthermore, if a defendant has been prejudiced by an illegal sentence, then allowing that illegal sentence to stand would constitute a miscarriage of justice. *See Paladino*, 401 F.3d at 483.

Our plain error inquiry also asks whether the district court, operating under the discretion permitted by *Booker*, might have sentenced Stewart any differently. *Paladino*, 401 F.3d at 483-84. The majority concludes that "[i]t is clear that the judge would not have given a lower sentence had the sentencing taken place post-*Booker*, so there is no plain error." Majority Op. at 8. In my view, that conclusion is not so clear.

The district court sentenced Stewart to 64 months' imprisonment. Significantly, this term was not at the high end of the guideline range the district court deemed applicable. Rather, 64 months rests at the middle of the 57 to 71 month range. Also, the district court judge did not make any comments indicating he would have sentenced higher had he known the Guidelines were only advisory—indeed, the sentence was in the middle of the range, and the judge could have sentenced higher while still remaining within the Guideline range.

---

[1] (...continued)
is more similar to a category IV offender than to one in any other category. *See United States v. Angle*, 315 F.3d 810, 813 (7th Cir. 2003); *United States v. Tai*, 994 F.2d 1204, 1214 (7th Cir. 1993).

The term of 64 months also does not reflect either a statutory maximum or minimum. My colleagues note that Stewart's sentence is lower than the statutory maximum, but I fail to see how the fact that a sentence is *lower* than a statutory maximum supports a conclusion that the district court would not have given a lower sentence had he known the Guidelines were advisory. *Cf. United States v. Lee*, 399 F.3d 864, 867 (7th Cir. 2005) (affirming sentence imposed *at* statutory maximum, where district court judge indicated it would have preferred to sentence higher); *Paladino*, 401 F.3d at 482-83 (noting that when sentence imposed at statutory minimum, this court can be confident a higher sentence would not have been imposed had sentencing judge known guidelines were advisory).

Also, although the district court judge departed upward from the Guideline range, both departures were tied to the Guidelines ("an increase in offense level of one level for each of those groups"; "the near certainty of future threats that Mr. Stewart presents is (at best) akin to the risk posed by category IV offenders"). As this court stated in *Lee*, in the paragraph after that quoted by my colleagues:

> Sometimes district judges depart by reference to the Guideline range. For example, a judge may say or imply something like: "your crime and background are 10% less serious than the norm, so I am departing by two levels from the Guideline range." Such a connection, expressed or inferred from other events, would suggest that additional leeway might have affected the sentence and would justify a remand under *Paladino* to learn the district court's disposition.

*Lee*, 399 F.3d at 867. Here, the district court's departures were tied to the Guidelines, and Stewart's resulting sentence was thus dependent on their mandatory nature.

In short, I do not believe we can be sure that the sentencing judge would impose the same sentence under the now-advisory scheme, especially where the sentence was, in the

district court's words, at "the center of the range." (Sent. Tr. at 132.) We recently considered and rejected an argument that a district court's upward departure obviates the need for a remand, and our analysis there is instructive here:

> [The sentencing judge] raised the guidelines range . . . by granting an upward departure, and then sentenced the defendant near the top of the elevated range. But as we pointed out in *Paladino*, a sentencing decision by a judge who thinks herself bound by the guidelines will be, if the judge is conscientious, a sentence relative to the guidelines. The judge will compare the defendant with the average offender in the different guideline ranges, without necessarily agreeing that the ranges are correct. Also, with the guidelines merely advisory the judge can take into account mitigating factors that the guidelines ignored, provided that in doing so she is acting "reasonably." *United States v. Booker, supra*, 125 S.Ct. at 765; *United States v. Paladino, supra*, 401 F.3d at 484. We cannot be sure that [the sentencing judge] would again sentence Scott to 120 months, now that the guidelines are merely advisory.

*United States v. Scott*, 405 F.3d 615, 617 (7th Cir. 2005); *cf. United States v. Cunningham*, 405 F.3d 497, 505 (7th Cir. 2005) (declining to grant *Paladino* remand where district court departed upward, sentenced at top of elevated guidelines range, and made comments including that the defendant came "before the court with no substantial prior criminal history at all, [and fell] within Criminal History Category I . . . a factor that work[ed] greatly [to Cunningham's] benefit, [but that] otherwise [the court would] be getting up to the statutory maximum in no time at all . . . .").

I respectfully dissent.

A true Copy:

    Teste:

                _____

                *Clerk of the United States Court of*
                *Appeals for the Seventh Circuit*