UNITED STATES of America,
Plaintiff,

v.

Michael L. MUSGROVE, Defendant.

Case No. 11–CR–24.

United States District Court,
E.D. Wisconsin.

Sept. 16, 2011.

Erica N. O'Neil, United States Department of Justice, Milwaukee, WI, for Plaintiff.

Daniel W. Stiller, Joanna T. Perini, Federal Defender Services of Wisconsin Inc., Milwaukee, WI, for Defendant.

ORDER ADOPTING MAGISTRATE JUDGE JOSEPH'S RECOMMENDATION (DOC. # 27) AND DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT FOR ITS TECHNICAL INSUFFICIENCY, OR IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS (DOC. # 15); DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT UPON SUBSTANTIVE FIRST AMENDMENT GROUNDS (DOC. # 14); AND GRANTING IN PART AND DENYING IN PART MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF THE FOURTH AMENDMENT (DOC. # 16)

C.N. CLEVERT, JR., Chief Judge.

The defendant, Michael L. Musgrove, filed two motions to dismiss the indictment pending against him, as well as a motion to suppress evidence seized during the search of his home. (Docs. # 14–16.) Musgrove argues that the indictment which charges him with communicating a threat in interstate commerce does not contain a description of the alleged threat or the person said to be threatened, and violates the First Amendment because it does not state that the words he is accused of transmitting constitute a "true threat" unprotected by the United States Constitution. Moreover, he asserts that the government executed a warrantless and non-consensual seizure of his laptop computer, and, therefore, the evidence obtained in the search of that computer should be suppressed.

Magistrate Judge Nancy Joseph issued her report and recommendation on April 20, 2011, finding that the indictment tracks the statutory language of 18 U.S.C. § 875(c), and the government's issuance of a bill of particulars on March 4, 2011, cured the indictment of any technical insufficiency. Judge Joseph further found

that, under Seventh Circuit precedent, the determination of whether a communication constitutes a "true threat" is to be made by the trier of fact, not the district court on a motion to dismiss at the indictment stage. Moreover, Judge Joseph found that police officers had probable cause to seize the defendant's laptop computer, but did not have the legal authority required to manipulate the mouse or touch a key so as to perform a search, however minimal, that revealed Musgrove's Facebook page. Nevertheless, she determined that this unauthorized search did not vitiate Musgrove's later consent to the search of his computer after he was taken to the police station.

■■■■ A district court reviews de novo the recommendations of the magistrate judge to which a party timely objects. 28 U.S.C. § 636(b)(1)(C); Fed.R.Crim.P. 59(b)(2), (3). Portions of a recommendation to which no party objects are reviewed for clear error. *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir.1999). Because Musgrove only filed objections to the rulings on his motions to dismiss, they will be reviewed de novo. The portion of the recommendation addressing the motion to suppress evidence obtained from his laptop computer will be reviewed for clear error.

The facts underlying the motion to suppress, which were largely stipulated to by the parties, are set forth on pages 12 and 13 of Magistrate Judge Joseph's recommendation. Briefly, two citizens contacted authorities after viewing a post on the "Rants and Raves" section of Craigslist. Craigslist provided authorities with the email address, phone number, and IP address of the user who posted the message, and they quickly linked to Musgrove. Musgrove answered the door of his basement apartment and officers entered. He admitted to officers that he "did it on a dare," and was placed under arrest. Although Musgrove consented to the search of his home for weapons or contraband, Officer Shultz seized a laptop computer which was in screen saver mode. Officer Shultz either touched a key or moved the computer mouse and revealed Musgrove's Facebook page with a posting related to the Mayfair Shopping Mall. Later, at the police station, Musgrove waived his Miranda rights, signed a consent form, and gave a full confession.

There is no dispute that the officers were lawfully present in Musgrove's home, that the laptop was located in plain view, that the apartment belonged to the individual who voluntarily made incriminating statements about the crime, and that officers were investigating a threatening post made via the internet. That Musgrove's Facebook page became apparent prior to waiver of his Miranda rights and full confession did not taint the subsequent search conducted with his consent inasmuch as his behavior at all times—in the apartment and later at the station—was cooperative. Finding no plain error, the court will adopt Judge Jospeh's recommendation to deny Musgrove's motion to suppress the evidence seized during the search of his home.

Turning to the motions to dismiss, the defendant asserts that the recommendation is erroneous because it fails to account for the fact that the "trueness" of the alleged threat is a constitutional element of the offense. Without that element, the statute would be constitutionally overbroad because it would essentially criminalize constitutionally protected speech. Not only does the omission of "trueness" run afoul of Rule 7(f), it suggests that no grand jury has deemed Musgrove's speech to be unprotected.

■■■■ "An indictment is deemed sufficient if it: (1) states the elements of the

offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or convictions as a bar against future prosecutions for the same offense." *United States v. McLeczynsky,* 296 F.3d 634, 636 (7th Cir.2002) (citing *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 41 L.Ed.2d 590 (1974) and *United States v. Anderson,* 280 F.3d 1121, 1124 (7th Cir.2002)). The Seventh Circuit has stated that when determining the sufficiency of an indictment, the court looks "at the contents of the subject indictment 'on a practical basis and in its entirety, rather than in a hypertechnical manner.'" *McLeczynsky,* 296 F.3d at 636 (citing *United States v. Smith,* 230 F.3d 300, 305 (7th Cir.2000)). Moreover, "[f]acial sufficiency is not a high hurdle.... Generally, an indictment is sufficient when it sets forth the offense in the words of the statute itself, as long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Bates,* 96 F.3d 964, 970 (7th Cir.1996) (citing *United States v. Hinkle,* 637 F.2d 1154, 1157 (7th Cir.1981)).

Title 18, Section 875(c) of the United States Code reads as follows:

> (c) Whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both.

The Seventh Circuit has set forth the elements of 18 U.S.C. § 875(c) as follows: "[f]irst, that the Defendant said or transmitted a communication in interstate commerce; second, the communication contained a threat to injure another person; and third, the Defendant did so knowingly." *United States v. Stewart,* 411 F.3d 825, 827 (7th Cir.2005) (emphasis omitted).

Here, the indictment charges that "[o]n or about January 14, 2011, in the State and Eastern District of Wisconsin, Michael Musgrove knowingly transmitted in interstate commerce a communication containing a threat to injure the person of another." (Doc. # 6.) This language, albeit bare-boned, sets forth the offense in the words of the statute and the elements as stated by the Seventh Circuit in *Stewart. Id.* Hence, the court finds that the indictment withstands Musgrove's attack.

However, any deficiency in the indictment regarding the details of Musgrove's alleged threat was cured by the filing of the bill of particulars, which was the relief requested in the alternative by the defendant in his motion to dismiss. (Doc. # 21.) The government's bill of particulars recites the Craigslist posting:

> Title: Mayfair mall gonna make da news dis weekend again (da hood)
>
> Date: 2011–01–14, 7:15 PM CST
>
> Posting ID: 2161131197
>
> Text: thats right snitches, ... ya all herd me ... ya all thought I was done...... but I was layin lo ..... listenin to ya all crakas talk you shit about how ya all punks gonna take it back all ya all was talkin about was waaaa waaaa what happenin to ya alls mall and how ya all pussy azz bitches gonna do sumthin specifically that big ufc wanna be pussy talkin about how he own the mall an how tough that punk azz is thuth is big pussy ..... you aint tougher then my 9 which ill be bringing dis sat glock glock motherfucker .... when I put that glock upside yo head you aint gonna do shit ....cept beg fo you life bithe ya all though few weeks ago was bad .... watch dis shit sat.... I gots mi shit together an organized crakas an no

non of ya all gonna do shit cause me an my boys OWN dat mall

[SIC]. At a minimum, a reasonable jury may determine that the posting threatens that Mayfair Mall is going to make news over the weekend (Saturday), when the individual brings his Glock firearm and puts it to people's heads to make them beg for their lives. In addition, the government maintains that it is complying with its open file policy, thereby providing Musgrove with discovery, and that the posting was accompanied by a picture of a Glock. Hence, it simply cannot be said that Musgrove is not aware of the specific conduct at issue when he has been provided materials the government may use at trial, including the Craigslist posting. Ultimately, the indictment tracks the language of 18 U.S.C. § 875(c), sets forth the elements of the offense and has been supplemented by the bill of particulars as Musgrove requested. The motion to dismiss for technical insufficiency will not be granted.

Next, turning to Musgrove's assertion that the recommendation is erroneous because it finds that the trier of fact must determine whether the alleged threat was a true threat. The government responds that the "issue of whether it is a true threat, as opposed to constitutionally-protected speech, is a heavily fact-dependent, context-driven determination which numerous courts have held must be reserved for the trier of fact."

Because this court finds that the indictment in this case, as supplemented by the March 4, 2011, bill of particulars, complies with Fed.R.Crim.P. 7(c) and the prevailing case law of this circuit, it cannot conclude that the recommendation contains any error of law regarding the First Amendment issue. The Seventh Circuit has held that the determining whether a statement constitutes true threat is question which should be left to the trier of fact. *See*

*United States v. Saunders,* 166 F.3d 907, 912 (7th Cir.1999) (holding that "whether the statement [contained in the defendant's letter to Judge Manning] constitutes a threat was an issue of fact for the jury to decide," in a case involving 18 U.S.C. § 115(a)(1)(B)); *United States v. Schneider,* 910 F.2d 1569, 1570 (7th Cir.1990) (holding that "[t]he threat in this case was ambiguous, but the task of interpretation was for the jury ..." in a case involving 18 U.S.C. § 876); *United States v. Parr,* 545 F.3d 491, 500 (7th Cir.2008) (discussing the possible change in the threat doctrine after the Supreme Court's decision in *Virginia v. Black,* 538 U.S. 343, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) and stating that if the doctrine had changed "the factfinder" would now be asked to answer an additional question regarding subjective intent); *United States v. White,* 610 F.3d 956, 962 (7th Cir.2010) (reversing a district court's dismissal because the defendant's argument was not whether the indictment was valid but whether the posting on the website was a solicitation or speech deserving of First Amendment protection, which was an issue for the jury to decide). Other circuits have similarly held that whether a statement is a "true threat is to be decided by the trier of fact." *See also United States v. Howell,* 719 F.2d 1258, 1260 (5th Cir.1983). Although none of the cases deal directly with § 875(c), they discuss situations where a defendant's speech is under scrutiny as threat or some other means by which it loses its First Amendment protection. And in all of these cases, the appellate courts have found that it is a question of fact, not law, whether the speech was a threat or worthy of First Amendment protection. Now, therefore,

IT IS ORDERED that Magistrate Judge Joseph's recommendation (Doc. # 27) is adopted.

IT IS FURTHER ORDERED that defendant Musgrove's motion to dismiss the indictment for its technical insufficiency, or in the alternative, for a bill of particulars (Doc. # 15) is denied.

IT IS FURTHER ORDERED that Musgrove's motion to dismiss upon substantive first amendment grounds (Doc. # 14) is denied.

IT IS FURTHER ORDERED that the motion to suppress evidence obtained in violation of the Fourth Amendment (Doc. # 16) is granted in part and denied in part.

### RECOMMENDATION TO THE HONORABLE CHARLES N. CLEVERT

NANCY JOSEPH, United States Magistrate Judge.

On January 25, 2011, a grand jury sitting in the Eastern District of Wisconsin returned a one-count indictment against Michael L. Musgrove charging him with communicating a threat in interstate commerce, in violation of 18 U.S.C. § 875(c). Musgrove was arraigned on the charge and entered a plea of not guilty. Trial before The Honorable Charles N. Clevert is currently adjourned upon resolution of these pre-trial motions.

Musgrove has filed three pre-trial motions: (1) a motion to dismiss the indictment for technical insufficiency, alternatively, he moves for a bill of particulars; (2) a motion to dismiss the indictment on First Amendment grounds; and (3) a motion to suppress evidence obtained in violation of the Fourth Amendment. Musgrove's motions are now fully briefed and are ready for resolution. For the reasons discussed below, the Court recommends that the motion to dismiss the indictment for technical insufficiency and alternatively for a bill of particulars be denied as moot. The Court also recommends that the mo-

tion to dismiss the indictment on First Amendment grounds be denied. Finally, the Court recommends that the motion to suppress evidence be granted in part and denied in part.

### I. Motion to Dismiss Indictment for Technical Insufficiency

The defendant moves to dismiss the indictment alleging that it is deficient in its failure to describe the charged threat or identify the person allegedly threatened. (Defendant's Motion To Dismiss at 1) (Docket # 15). Alternatively, the defendant moves for a bill of particulars. *Id.*

The government responds that the indictment provides a plain and concise statement of the charge. (Government's Brief at 4) (Docket # 20). Additionally, the government filed a bill of particulars (Docket # 21) and is following its open-file policy. The government asserts that the defendant's motion should be denied on the merits or as moot. (Government's Brief at 4).

The minimal requirements for a valid indictment are grounded on the constitutional mandates of the Fifth and Sixth Amendments. The Fifth Amendment guarantees the right to an indictment by grand jury and serves as a bar to double jeopardy, while the Sixth Amendment guarantees that a defendant be informed of the charges against him. *United States v. Hinkle*, 637 F.2d 1154, 1157 (7th Cir. 1981). These constitutional mandates establish three minimum requirements for an indictment. First, it must adequately state all of the elements of the crime charged; second, it must inform the defendant of the nature of the charges so that he may prepare a defense; and finally, the indictment must allow the defendant to plead the judgment as a bar to any future prosecution for the same offense. *United*

*States v. Smith,* 230 F.3d 300, 305 (7th Cir.2000). Moreover, Fed.R.Crim.P. 7(c)(1) requires that an indictment be a "plain, concise, and definite written statement of the essential facts constituting the offense charged."

■■■■ In setting forth the offense, the indictment should generally "track" the words of the statute itself, "so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Id.* It is required, at a minimum, that an indictment provide the defendant with some means of "pinning down the specific conduct at issue." *Id.* The absence of any particular fact is not necessarily dispositive of the issue. *Id.* Further, indictments are reviewed "on a practical basis and in their entirety, rather than in a hypertechnical manner." *Id.* (internal citations omitted).

■■■ In this case, the single-count indictment returned by a grand jury in this district provides as follows:

The Grand Jury Charges That: On or about January 14, 2011, in the State and Eastern District of Wisconsin, **Michael L. Musgrove** knowingly transmitted in interstate commerce a communication containing a threat to injure the person of another. All in violation of Title 18, United States Code, Section 875(c).

(Docket # 6). It appropriately tracks the language of the statute which states "whoever transmits in interstate or foreign commerce any communication containing any threat to kidnap any person or any threat to injure the person of another, shall be fined under this title or imprisoned not more than five years, or both." 18 U.S.C. § 875(c). An indictment that tracks the statutory language can nonetheless be considered deficient if it does not provide enough factual particulars to "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v.*

*United States,* 369 U.S. 749, 763, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962).

In challenging the sufficiency of the indictment, the defendant points to its failure to include the alleged threat at issue or the alleged victim. A review of a non-exhaustive list of indictments involving threats or similar offenses is useful here. *United States v. White,* 610 F.3d 956 (7th Cir.2010), involved a prosecution under 18 U.S.C. § 373 for soliciting another to harm the foreperson of a federal jury that had convicted a white supremacist. The solicitations were postings on the defendant's internet website. The indictment identified the website, the specific date of the posting, and the specific post which was alleged to constitute the proscribed solicitation. In finding the indictment sufficient, the Seventh Circuit noted that not only did the indictment track the language of the statute but, by "adding factual allegations and dates, it makes White aware of the specific conduct against which he will have to defend himself at trial." *Id.* at 959.

In *United Stated v. Landham,* 251 F.3d 1072 (6th Cir.2001), the indictment charged the defendant with communicating a threat to kidnap or injure a person in violation of 18 U.S.C. § 875(c). The indictment identified the date the threat was made, the recipient of the threat, the means by which the threat was conveyed, and the specific words constituting the alleged threat:

On or about a [sic] February 7th, 1998, in Lewis County, in the Eastern District of Kentucky,

WILLIAM M. LANDHAM

defendant herein, did knowingly transmit in inter-state commerce a threat to kidnap another person, in that by interstate phone call he stated to Belita Landham words to the effect: "I'm going to tell you something you.... You

will not have Priscilla by her second birthday, because I'm going to have all your children.... You will not have Priscilla to raise ... I'm going to get her,"; all in violation of Title 18, United States Code, Section 875.

*Id.* at 1081.

Similarly, in *United States v. Baker*, 890 F.Supp. 1375 (E.D.Mich.1995), the defendant was charged in a five-count indictment with transmitting e-mail threats to injure or kidnap another in violation of 18 U.S.C. § 875(c). The indictment identified the author, the recipient, the dates, and specific content of the messages alleged to constitute the threats. *Id.* at 1387–90.

By marked contrast, the indictment in this case is bare-boned. Beyond identifying the date, (on or about January 14, 2011), and the geographic boundary, (in the State and the Eastern District of Wisconsin), the indictment alleges no other facts. Specification of the date and general geographic boundary adds little, if anything, to the knowledge of the charge against Musgrove given the frequency of use and the diverse modes of interstate communication used on any given day. *See, e.g., United States v. Hinkle*, 637 F.2d 1154 (7th Cir.1981)(indictment's specification of the date on which the defendant used the phone in violation of the 21 U.S.C. § 843(b) added little if anything to the defendant's knowledge of the charges against her, "given the frequency with which most people use the telephone during any one day"). The failure of the present indictment to include any factual allegations simply does not provide the defendant a means of "pinning down the specific conduct at issue." *Smith*, 230 F.3d at 305. "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal stat-

ute." *Russell*, 369 U.S. at 749, 82 S.Ct. 1038. Conceivably, at trial, the government could offer proof of any threat to injure any person made by the defendant on or about January 14, 2011 in the State and Eastern District of Wisconsin, transmitted in interstate commerce by any means, and it would be covered by the current indictment. Accordingly, the Court concludes that the indictment in this case, while tracking the statutory language 18 U.S.C. § 875(c), fails to plead enough factual information to enable the defendant to prepare a defense.

Nonetheless, Federal Rule of Criminal Procedure 7(f) authorizes the court to order the filing of a bill of particulars to fill in facts in the indictment so that the defendant can prepare an adequate defense. *See* Fed.R.Crim.P.7 (f); *United States v. Kendall*, 665 F.2d 126, 134 (7th Cir.1981). While a bill of particulars will not cure an indictment that omits an essential element of the offense, it can be ordered to fill in facts in an indictment that is otherwise generally sufficient. A bill of particulars is "a more specific expression of the activities the defendant is accused of having engaged in which are illegal." *United States v. Canino*, 949 F.2d 928, 949 (7th Cir.1991). A bill of particulars is required only where the charges in the indictment are so general that they do not advise the defendant of the specific act of which he is accused. *See Canino*, 949 F.2d at 949.

The test for determining whether a bill of particulars should be granted is similar to the test for determining the general sufficiency of the indictment, namely, "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *United States v. Fass-*

*nacht,* 332 F.3d 440, 446 (7th Cir.2003)(quoting *Kendall,* 665 F.2d at 134; *Canino,* 949 F.2d at 949. "An indictment which includes each of the elements of the offense charged, the time and place of the accused's conduct which constituted a violation, and a citation to the statute or statutes violated is sufficient to pass this test." *Kendall,* 665 F.2d at 134. A bill of particulars is not required when a defendant can obtain the information necessary for his or her defense through "some other satisfactory form." *Fassnacht,* 332 F.3d at 447, n.2 (quoting *Canino,* 949 F.2d at 949).

 As discussed above, the indictment in this case appropriately tracks the statutory language and contains all the elements of the offense. It is nonetheless generic and lacks in factual specificity. Ordering the government to file a bill of particulars is moot, however, because the defendant already has ample access to the factual information necessary to prepare his defense. The government, in response to the defendant's motion, has voluntarily filed a bill of particulars containing the date, time, and full text of the communication at issue. Moreover, the government is complying with its open-file policy and has provided the defendant with pretrial discovery. *See Fassnacht,* 332 F.3d at 447, n. 2; *Canino,* 949 F.2d at 949 ("The 'open file' policy is an 'adequate satisfactory form' of information retrieval making the bill of particulars unnecessary."). The indictment together with the bill of particulars and discovery materials provide the defendant with sufficient information to apprise him of the charges and enable him to prepare his defense at trial.

Additionally, in his reply, the defendant argues that the trueness of his threat is a constitutionally necessary element of Section 875(c) and that neither the statute nor the indictment contains the "true threat" element. (Docket # 22 at 2). Indeed, the Seventh Circuit has held that the government must prove that an unlawful communication contains a "true threat." *United States v. Stewart,* 411 F.3d 825, 827 (7th Cir.2005). However, in the same opinion, the court also stated that the three elements of 18 U.S.C. § 875(c) are: (1) the defendant said or transmitted a communication in interstate commerce; (2) the communication contained a threat to injure another person; and (3) the defendant did so knowingly. *Id.*

 Although the Seventh Circuit has held that the government must prove a "true threat," it has not required that an indictment charging the defendant with criminal use of threatening language allege a "true threat" nor has it reversed a conviction for failure to include language defining what constitutes a "true threat" in an indictment.[1] Rather, the Seventh Circuit has held that the determination of "true threat" is to be made by the jury at trial. *United States v. White,* 610 F.3d 956, 959 (7th Cir.2010). In this case, the indictment tracks the language of the statute and includes each of the three elements of Section 875(c) as stated by the Seventh Circuit. The defendant has not cited and the Court has not found any

---

1. Courts have held that the exact wording of a threatening statement need not be set out in the indictment. *See, e.g., United States v. Robin,* 693 F.2d 376, 379–80 (5th Cir.1982)(finding that a substantial summary of the threats was sufficient); *United States v. Kistler,* 558 F.Supp.2d 655, 656–57 (W.D.Va.2008)(holding that an indictment under Section 875(c) was not defective where it does not contain the specific words of the threats). Furthermore, the Fifth Circuit also held that an indictment omitting the word "true" in referring to the threat does not omit an essential element when it tracks the language of the statute. *See United States v. Howell,* 719 F.2d 1258, 1261 (5th Cir.1983).

Seventh Circuit precedent requiring the indictment to additionally plead a "true threat."

In summary, the indictment here, though bare-boned, tracks the statutory language of 18 U.S.C. § 875(c) as required. Its lack of specific facts is addressed by the bill of particulars and open-file policy. The indictment together with the bill of particulars and open-file policy give the defendant sufficient information to place him on notice of the offense and prepare a defense for trial. Additionally, there is no Seventh Circuit precedent requiring that the indictment pleads a "true threat." Accordingly, it is recommended that the motion to dismiss the indictment for technical insufficiency and alternatively for a bill of particulars be denied as moot.

## II. Motion to Dismiss Indictment on First Amendment Grounds

Musgrove also filed a motion to dismiss the indictment pursuant to the First Amendment, arguing that the speech at issue is protected because it does not communicate a "true threat." (Defendant's Motion to Dismiss at 3) (Docket # 14). The indictment does not contain the speech at issue, however, the bill of particulars recites a Craigslist posting. The posting read as follows:

Title: Mayfair mall gonna make da news dis weekend again (da hood)
Date: 2011–01–14, 7:15 PM CST
Posting ID: 2161131197
Text: thats right snitches, ... ya all herd me ... ya all thought I was done but I was layin lo listenin to ya all crakas talk yo shit about how ya all punks gonna take it back all ya all was talkin about was waaaa waaaa what happenin to ya alls mall and how ya all pussy azz bitches gonna do sumthin specifically that big ufc wanna be pussy talkin about how he own the mall an how

tough that punk azz is thuth is big pussy you aint tougher then my 9 which ill be bringin dis sat glock glock motherfucker .... when I put that glock upside yo head you aint gonna do shit .... cept beg fo yo life bithc ya all thought few weeks ago was bad .... watch dis shit sat.... I gots mi shit together an organized crakas an non of ya all gonna do shit cause me an my boys OWN dat mall

(Docket # 21). Along with the text, the posting included a photograph of a black semiautomatic Glock handgun.

Musgrove does not claim that his statements are a form of political speech. Rather, Musgrove argues that, once analyzed and interpreted, his Internet posting does not contain a true threat because (1) the communication contains, at most, a threat to threaten; (2) the target is too unspecific; and (3) the target exclusively controls the triggering condition. *Id.* at 5–9.

The government interprets the posting differently and submits that it does constitute a true threat. The government further argues that whether the posting contains a "true threat" is a factual issue for a jury to decide. (Government's Brief at 5–8).

The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech." U.S. Const. amend. I. The Supreme Court has explained, however, that "[t]he protections afforded by the First Amendment ... are not absolute, and ... the government may regulate certain categories of expression consistent with the Constitution." *Virginia v. Black*, 538 U.S. 343, 358, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (addressing whether cross-burnings are constitutionally protected speech or "true threats"). For example, threats of violence are not protected by the First Amendment. *Id.* at

359, 123 S.Ct. 1536. The Supreme Court has cautioned that where a statute "makes criminal a form of pure speech, [it] must be interpreted with the commands of the First Amendment clearly in mind." *Watts v. United States,* 394 U.S. 705, 707, 89 S.Ct. 1399, 22 L.Ed.2d 664 (1969)(distinguishing constitutionally protected speech, such as political hyperbole, from a threat).

■ Because 18 U.S.C. § 875(c) criminalizes pure speech, the government must prove that an allegedly unlawful communication contains a "true threat." *United States v. Stewart,* 411 F.3d 825, 828 (7th Cir.2005)(quoting *Watts,* 394 U.S. at 707–08, 89 S.Ct. 1399). The Supreme Court has defined "true threats" as "those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black,* 538 U.S. at 359, 123 S.Ct. 1536 (2003). To establish a "true threat," the government must prove that the statement came "in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates a statement as a serious expression of an intention to inflict bodily harm upon or to take the life of [another individual]." *United States v. Khorrami,* 895 F.2d 1186, 1192 (7th Cir.1990)(quoting *United States v. Hoffman,* 806 F.2d 703, 707 (7th Cir.1986))(brackets in original).

In the present case, the parties disagree on whether the Craigslist posting constitutes a "true threat." Each offers competing inferences and interpretations of the posting. More to the point, the defendant seeks one of three forms of relief: (1) a dismissal of the indictment for its failure to state a cognizable offense; (2) an *in camera* judicial review of the charge given to the grand jury to determine whether it

was called upon to consider whether the speech at issue is a "true threat"; or (3) a pretrial substantive determination by the Court of whether a "true threat" was communicated in the instant case. (Defendant's Reply Brief at 3).

■ First, as discussed above, the indictment tracks the statutory language of 18 U.S.C. § 875(c) and contains all the required elements. As such, the indictment in this case does allege a cognizable offense. Second, for the same reason, the Court must decline the invitation to conduct an *in camera* review of the charge given to the grand jury. Third, the Seventh Circuit has consistently held that the determination of whether a communication embodies a "true threat" resides with the fact finder. *See, e.g., United States v. Parr,* 545 F.3d 491, 497 (7th Cir.2008); *United States v. Saunders,* 166 F.3d 907, 912 (7th Cir.1999); *United States v. Schneider,* 910 F.2d 1569, 1570 (7th Cir. 1990). Recently, the Seventh Circuit reversed the district court's grant of a motion to dismiss an indictment pursuant to the First Amendment, reiterating that the "potential First Amendment concern is addressed by the requirement of proof beyond a reasonable doubt at trial, not by a dismissal at the indictment stage." *United States v. White,* 610 F.3d 956, 959 (7th Cir.2010). Following Seventh Circuit precedent, the question of whether the Craigslist posting in this case could be interpreted as a "true threat" is a question for the jury at trial. Therefore, the Court recommends that Musgrove's motion to dismiss the indictment on First Amendment grounds be denied.

### III. Motion to Suppress Evidence

Musgrove moves to suppress any evidence obtained from his laptop computer, arguing that officers exceeded the scope of his consent when they searched and seized

the computer while searching his residence for weapons and contraband. (Defendant's Motion To Suppress at 4). The government concedes that the officers operated outside the scope of Musgrove's consent when they seized the computer. (Government's Brief at 10). However, the government contends that Musgrove's Fourth Amendment rights were not violated because the plain view exception to the warrant requirement applies to the seizure in this case. *Id.*

### A. Stipulated Facts

The facts material to the resolution of this motion are largely agreed upon by the parties and no evidentiary hearing was requested. Around 8 p.m. on January 14, 2011, the Wauwatosa Police Department received two phone calls from citizens in the community who observed a concerning post on the "Rants and Raves" section of Craigslist.[2] (Def.'s Mot. to Suppress at 1–2; Gov't. Br. at 9). The reported post was published at 7:15 p.m. and titled "Mayfair mall gonna make da news dis weekend again (da hood)." (Def.'s Mot. to Suppress at 2; Gov't. Br. at 9). In response to these calls, Detective Dan Collins began an investigation by contacting Craigslist. *Id.* Craigslist provided an email address, phone number and IP address of the user who posted the message. *Id.* A search of the phone number through Lexis/Nexis revealed that the number was listed to Michael L. Musgrove. *Id.*

Detective Collins, Officer Michael F. Schultz, Officer Tim Warren and two members of the West Allis Police Department commenced attempts at locating Musgrove. *Id.* The officers eventually found Musgrove at the home he shares with his brother and a roommate. *Id.* The officers knocked on the window of Musgrove's basement apartment and then walked to the back door to speak with Musgrove. *Id.* At the back door, Musgrove opened the door and the officers entered the residence. *Id.* Detective Collins began speaking with Musgrove. *Id.* Officer Warren and Officer Schultz conducted a protective sweep of the basement apartment. *Id.*

Detective Collins informed Musgrove that the officers were there in response to a posting on Craigslist. (Def.'s Mot. to Suppress at 2; Gov't. Br. at 10). Musgrove made several responsive statements to include that he was stupid, he did it on a dare from a friend, and that he did not mean any harm by it. *Id.* At some time during the questioning of Musgrove, Detective Collins placed Musgrove under arrest and secured him in the back of Officer Warren's car. (Def.'s Mot. to Suppress at 3; Gov't. Br. at 10).

Prior to being removed from the scene, Musgrove gave consent for the officers to search his home for, specifically, weapons or contraband. (Def.'s Mot. to Suppress at 3; Gov't. Br. at 10). Officer Schultz conducted the search of Musgrove's room for weapons or contraband. *Id.* During that search, Officer Schultz decided to seize the laptop as "possible evidence" because "Musgrove had been taken into custody." *Id.* This decision was made before the computer was taken out of screen saver mode.[3] *Id.* When Officer Schultz first saw the laptop, the screen saver was displayed. (Def.'s Mot. to Suppress at 3). Officer

---

**2.** The "Rants and Raves" section of Craigslist is one of the discussion forums on the website.

**3.** A screen saver is "a computer program that usually displays various images on the screen of a computer that is on but not in use." Merriam–Webster Online Dictionary, http://www.merriam-webster.com, last visited Apr. 20, 2011.

Schultz manipulated the computer, either by touching a key or moving the mouse, to disable or hide the screen saver. (Defendant's Supplemental Brief at 1). Once the screen saver was no longer visible, the computer revealed Musgrove's "Facebook wall." (Def.'s Mot. to Suppress at 3). Musgrove's Facebook wall revealed that he had recently "liked" "Mayfair Mall Needs Change" and had posted "just got off the Mayfair mall website, new names being considered are Capitol Court West and Northridge 2.0 ... watch out Southridge ... you're next." *Id.*

Officer Schultz seized the laptop and then brought it to the police station at the same time the officers transported Musgrove to the police station. (Def.'s Mot. to Suppress at 3; Gov't. Br. at 10). Musgrove never gave the Officers consent to seize his laptop. *Id.*

At the police station, Detective Collins questioned Musgrove about the incident, advised Musgrove that the police possessed his computer, asked Musgrove whether there was child pornography on the computer, and then asked Musgrove for consent to search the computer. Musgrove signed a consent form. (Def.'s Mot. to Suppress at 3).

**B. Discussion**

At issue in the present case is whether the plain view exception to the warrant requirement of the Fourth Amendment applies to the search and seizure of the defendant's laptop. "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant." *Coolidge v. New Hampshire*, 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971)(plurality opinion). The plain view doctrine allows for seizure of material if: (i) an officer is lawfully present; (ii) an item not named in the warrant (or outside the scope of consent) is in the plain view of the officer; and (iii) the incriminating nature of the item is immediately apparent or the government can show probable cause to believe the item is linked to criminal activity. *United States v. Raney*, 342 F.3d 551, 559 (7th Cir.2003).

The parties do not dispute that Officer Schultz was lawfully present at the residence. The parties also do not dispute that the laptop was in plain view of Officer Schultz. Thus, the first and second elements are satisfied. The dispute, thus, turns on the third prong of the plain view test: whether the incriminating nature of the laptop was immediately apparent or whether Officer Schultz had probable cause that it was linked to criminal activity. The incriminating nature of an object is immediately apparent if, under the circumstances, the officer has "probable cause to believe that the item is linked to criminal activity." *United States v. Bruce*, 109 F.3d 323, 328 (7th Cir.1997). A showing of probable cause does not rule out the need for further investigation in order to confirm the incriminatory character of the seized evidence. *See Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). As the Supreme Court has noted many times, "probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief' that certain items may be contraband or stolen or useful as evidence of a crime; it does not demand any showing that such belief be correct or more likely true than false." *Id.* Moreover, the fact that the item itself can be perfectly legal to possess does not bar application of the plain view exception. *Raney*, 342 F.3d at 559.

Musgrove argues that the plain view exception should not apply because the criminal character of the computer was not

immediately apparent. Instead, he contends that the computer was in screen saver mode and the officer had to manipulate the computer (by moving the mouse or touching a key) in order to view the computer screen with the Facebook wall posting that implicated him in the alleged threat. In support of this argument, the defendant cites *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987) and *United States v. Dichiarinte,* 445 F.2d 126 (7th Cir.1971).

In *Hicks,* the Supreme Court found that the plain view doctrine did not apply where law enforcement officers, while investigating a shooting, moved plainly visible stereo components to obtain the serial numbers that were not plainly visible from the officer's lawful vantage point in order to determine that the stereo components were stolen. 480 U.S. at 323, 107 S.Ct. 1149. In *Dichiarinte,* the Seventh Circuit found that officers had exceeded the scope of the defendant's consent to search his home for narcotics when they read the defendant's personal papers and then seized documents implicating the defendant in tax fraud. 445 F.2d at 130.

■■■■ These facts are distinguishable from the current case. First, unlike both *Hicks* and *Dichiarinte,* the connection between the computer and the investigation which brought the officers to the residence is clear. The officers were investigating a threatening post made on a Craigslist discussion forum. The only way to access Craigslist is via the internet. A computer is a tool for accessing the internet. Craigslist had already provided the police with an email address, phone number, and IP address of the user who posted the message. It was, therefore, reasonable for the officers to believe that the laptop, which was found in the room of an individual who had made incriminating statements about the crime, may be connected to the criminal activity under investigation or that it would have evidentiary value.

Second, the evidentiary value of the laptop was apparent before the officer manipulated the computer. Again, Craigslist can only be accessed via the internet. A laptop is a tool, among others, for accessing the internet. Craigslist identified the posting by the poster's internet connection address. The defendant made incriminating statements admitting making the postings. In light of these facts, which were known to the officer prior to taking the laptop, the incriminating nature of the laptop was apparent. Moreover, the decision to seize the laptop was made before it was taken out of screen saver mode. Thus, unlike *Hicks* and *Dichiarinte,* the officer acquired probable cause to believe the laptop was incriminating or connected to the criminal activity under investigation before manipulating it.

Here, the elements of the plain view doctrine are satisfied: (1) the officer was lawfully present in the residence; (2) the officer lawfully acquired access to the laptop; and (3) there was probable cause that the laptop was connected to the criminal activity under investigation. Accordingly, the Court concludes that the plain view exception applies to the seizure of the computer.

But the defendant complains not just of the seizure of the laptop from the residence, but also of the manipulation of the computer at the residence as an unauthorized search. The parties stipulate that Officer Schultz manipulated the computer by either touching a key or moving the mouse and that this was necessary to disengage the screen saver. (Defendant's Supplemental Brief at 1) (Docket # 25). The defendant argues that the officer's manipulation of the computer by either touching a key or moving the mouse to take the laptop out of screen saver mode

constitutes an invalid search. (*Id.* at 2). The government argues that. the manipulation of the computer was not a search but was for the purpose of seizing the computer. (Government's Supplemental Brief at 1) (Docket # 26).

For the reasons previously stated, the officers had authority to seize the computer because they had probable cause that it was linked to the criminal activity which they were investigating. However, once seized, a warrant or other legal authority is required to conduct a search of the computer. *See, e.g., Horton v. California,* 496 U.S. 128, 142 n. 11, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990)("Even if the item is a container, its seizure does not compromise the interest in preserving the privacy of its contents because it may only be opened pursuant to either a search warrant or one of the well-delineated exceptions to the warrant requirement.")(internal citations omitted); *United States v. Gray,* 78 F.Supp.2d 524, 530–31 (E.D.Va. 1999) (involving a second warrant obtained to search a computer already in law enforcement custody).

Whether there is a search here is a close call because the officer did not actively open any files.[4] A truly cursory inspection—one that involves merely looking at what is already exposed to view, without disturbing it—is not a "search" for Fourth Amendment purposes. *Arizona v. Hicks,* 480 U.S. 321, 328, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). However, this is not such a case. By touching a key or moving the mouse, the officer put into view the Facebook wall, which was not previously in view. Though a close call, the Court concludes that this was a search, however

minimal, which required further authority, a warrant or consent. The government submits that the officer's manipulation of the computer was for the purpose of seizing the computer, not to conduct a preliminary search. However, intent is not generally relevant in assessing whether a search ensued. *See, e.g., United States v. Mann,* 592 F.3d 779, 784 (7th Cir.2010)(citing *Platteville Area Apt. Ass'n v. City of Platteville,* 179 F.3d 574, 580 (7th Cir. 1999)). The Court therefore recommends that the defendant's Facebook wall be suppressed.

This unauthorized search, however, does not vitiate the defendant's later consent at the station. The defendant does not challenge the voluntariness of that consent. He instead argues that it is a fruit of the illegal search. To determine whether the taint from an initial illegal search has been purged, the court should examine (1) the temporal proximity of the illegal entry and the consent; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct. *United States v. Pineda–Buenaventura,* 622 F.3d 761, 776 (7th Cir. 2010). Here, some time passed between the seizure and manipulation of the computer at the residence and the consent which was taken at the station where the defendant was *Mirandized* and made a full confession. There was both temporal distance and change of location. It is also of note that the Facebook wall at issue was displayed once the computer was out of screen saver mode. In other words, this is not a case where an officer flagrantly searched the files on the computer and came upon incriminating evidence.

---

4. Computer search cases generally deal with searching the data of a computer (such as opening files or searching for documents) rather than manipulating the computer. As such, court analysis generally focuses on the scope of the search rather than whether a search occurred. *See, e.g., United States v. Mann,* 592 F.3d 779 (7th Cir.2010); *United States v. Burgess,* 576 F.3d 1078 (10th Cir. 2009).

The defendant argues that it was only after being asked and denying that the computer contained child pornography that he consented to the search of the laptop. He further argues that there is no indication that he would have consented had the computer not already been seized. (Def.'s Supp. Brief at 4–5). To the contrary, the totality of the facts suggests otherwise. The defendant appeared to have been cooperative from the outset. At the residence, he made incriminating statements—that he was stupid, that he did it on a dare from a friend, and that he did not mean any harm by it. He consented to the search of the residence for weapons and contraband. At the station, he waived his *Miranda* rights and made a full confession. These facts indicate cooperation with the police. The Court is not persuaded that he only consented to the search of the computer because it was already seized, rather than that he was continuing to be cooperative.

At any rate and more importantly, there is no indication that the defendant was coerced or led by officers to believe that there was no use in withholding consent to search a computer that had already been seized. *See, e.g., United States v. Gillespie,* 650 F.2d 127, 129 (7th Cir.1981) (per curiam)(holding that a later consent could not save a search where the illegal search and the consent occurred at the same location, and the defendant was influenced by the belief that there was no use in withholding consent to search a place that had already been searched). Moreover, there is no indication that the police exploited information gained from the Facebook wall to obtain consent from the defendant. For these reasons, the Court concludes that the consent to search the computer given at the station was not tainted by the earlier search (manipulation of the laptop which revealed the Facebook wall). Therefore, the Court recommends that the defendant's motion to suppress be granted in part and denied in part.

**NOW, THEREFORE, IT IS RECOMMENDED** that the defendant's motion to dismiss the indictment for technical insufficiency and alternatively for a bill of particulars be **DENIED AS MOOT.**

**IT IS FURTHER RECOMMENDED** that the defendant's motion to dismiss the indictment on First Amendment grounds be **DENIED.**

**IT IS FURTHER RECOMMENDED** that the defendant's motion to suppress evidence be GRANTED in part and **DENIED** in part.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Criminal Procedure 59(b)(2) (as amended effective December 1, 2009), whereby written objections to any recommendation herein or part thereof may be filed within fourteen days of the date of service of this recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Courtesy paper copies of any objections shall be sent directly to the chambers of the district judge assigned to the case. Failure to file a timely objection with the district court shall result in a waiver of a party's right to appeal.

SO ORDERED this 20th day of April, 2011 at Milwaukee, Wisconsin.