# United States Court of Appeals

## For the Eighth Circuit

_____

No. 14-1780

_____

United States of America

*Plaintiff - Appellee*

v.

Deborah Mae Carlson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: December 12, 2014
Filed: June 2, 2015

_____

Before LOKEN, BRIGHT, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

Deborah Mae Carlson was convicted after a jury trial of nine counts of mailing threatening communications and three counts of mailing extortionate communications under various provisions of 18 U.S.C. § 876. On appeal, Carlson challenges her convictions for the three counts of mailing extortionate communications, arguing that the evidence was insufficient to support these counts and that the jury was improperly

instructed.  Having jurisdiction pursuant to 28 U.S.C. § 1291, we affirm in part and remand in part.

## I. Background

In March 2010, Carlson began bringing her pets for regular treatment at the Southfork Animal Hospital in Lakeville, Minnesota.  Because she had many animals and because she refused to give them medication herself, she was at the hospital often, sometimes on a daily basis.  Around this same time, Dr. Katherine Belisle, a veterinarian at the hospital, began receiving threatening letters detailing how she would be kidnapped, tortured, and raped.  The letters were hand-addressed to Dr. Belisle at the hospital, and most were sent anonymously, though some were signed "Jeff."  Eight such letters were addressed to Dr. Belisle over a two-month period—one accompanied by a knife left in the hospital's mailbox.  Two additional letters were sent to other employees of the hospital, detailing violence that would be committed against both the employees and Dr. Belisle.

During this time, three businesses near the animal hospital received threatening letters that were falsely signed in the name of Dr. Belisle.  One letter was mailed to "Target–Store Manager" and demanded that $50,000 be brought to the hospital address or "I will shoot people in your parking lot."  A second letter was addressed to "Valley Buick Pontiac GMC Store Manager," and demanded that $25,000 be brought to Dr. Belisle's animal hospital or "I will break windows on your cars."  The third letter was addressed to "Scott Lake Veterinary Center," a different animal hospital than the one where Dr. Belisle worked, and demanded that the clinic deliver animal medical supplies to Dr. Belisle, or else she would spread rumors that the clinic overcharged customers.

Carlson was indicted and charged with nine counts of mailing a threatening communication, in violation of 18 U.S.C. § 876(c); two counts of mailing a

threatening communication with intent to extort, in violation of 18 U.S.C. § 876(d); and a single count of mailing a threatening communication with an intent to extort, in violation of 18 U.S.C. § 876(b). At her trial, testimony was presented that Carlson had become infatuated with Dr. Belisle and had called the clinic threatening to shoot children at a nearby daycare if Dr. Belisle did not meet her at a gas station. A handwriting expert concluded that it was "highly probable" that Carlson had written the letters. A jury found Carlson guilty on all counts.

Count 10 of the indictment alleged a violation of 18 U.S.C. § 876(b), which applies to:

> Whoever, with *intent to extort from any person* any money or other thing of value, so deposits, or causes to be delivered, as aforesaid, any communication containing any threat to kidnap any person or any threat to injure *the person of the addressee* or of another . . . .

(Emphasis added). This count applied to the letter addressed to "Target–Store Manager," followed by the address of a Target store. The letter stated:

> Bring $50,000 to me at [redacted] Kenrick Ave in Lakeville Mn 4-19 by 10:00 am or on 4-20 I will shoot people in your parking lot.
> Katherine Belisle

Counts 11 and 12 of the indictment each alleged a violation of 18 U.S.C. § 876(d), which applies to:

> Whoever, *with intent to extort from any person* any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, *addressed to any other person* and containing any threat to injure the property or reputation of the addressee or of another . . . .

-3-

(Emphasis added). Count 11 applied to a letter addressed to "Valley Buick Pontiac GMC Store Manager," followed by the address for the dealership. The enclosed letter stated:

> If you do not bring $25,000 to me at [redacted] Kenrick Ave in Lakeville MN by 10 am on 4-21 that night or the next night I will break windows on your cars.
> Katherine Belisle

Count 12 applied to a letter addressed to "Scott Lake Veterinary Center," followed by the Veterinary Center's address. The enclosed letter stated:

> I want my animal hospital to get as much business as possible so that I get more money. So I am going to get the word out there that your hospital & others overcharge people and things like that. However, if you bring us animal medical supplies I will leave your place out of it. You could leave it outside our place at night with a note saying where it's from & if we can use the stuff I will cross your place off my list.
> Katherine Belisle

## II. Discussion

Carlson appeals, advancing two arguments. She first says that the evidence presented at trial was insufficient to prove that she had the requisite intent to extort. Her second argument is that 18 U.S.C. § 876 applies only when threatening letters are mailed to a natural person and that no reasonable jury could find that the letters in question were addressed to a "person" as the statute requires. We address each argument in turn.

-4-

## A. Intent to extort

"Our standard of review concerning whether the evidence is sufficient to support a conviction is strict. We review the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007) (internal quotation marks and citation omitted). We will overturn a conviction only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id.

Carlson argues that no reasonable jury could have found that she had the requisite "intent to extort" under 18 U.S.C. § 876(b) and (d) because she did not intend to "obtain" anything from the businesses she threatened. In making her argument, Carlson relies on Scheidler v. National Org. for Women, Inc., 537 U.S. 393, 397 (2003), in which the Supreme Court held that "petitioners did not commit extortion because they did not 'obtain' property from respondents as required by the Hobbs Act." The Hobbs Act, 18 U.S.C. § 1951, is a criminal statute that punishes whoever affects commerce "by robbery or extortion." Under the Hobbs Act, the term "extortion" is specifically defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear . . . ." 18 U.S.C. § 1951(b)(2).

In Scheidler, petitioners were anti-abortion activists who had used threats of violence to intimidate women and clinic staff from going to abortion clinics. No demands were made from these women to actually hand over anything of tangible value. The Court ruled that, though the threats were coercive and unlawful, they did not constitute extortion because the activists "neither pursued nor received something of value from respondents that they could exercise, transfer, or sell." Scheidler, 537 U.S. at 405 (quotation omitted).

The present case differs from Scheidler in two key respects: The statute in question does not define the term extort; and Carlson *did* demand items of value, she just did not seek to obtain them for herself. As for the definition of extort, in another case evaluating the application of the Hobbs Act, Sekhar v. United States, the Supreme Court ruled that "absent other indication, 'Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'" 133 S. Ct. 2720, 2724, (2013) (quoting Neder v. United States, 527 U.S. 1, 23 (1999)). "Extortion require[s] the obtaining of items of value, typically cash, from the victim." Id. "Obtaining property requires 'not only the deprivation but also the acquisition of property.'" Id. at 2725 (quoting Scheidler, 537 U.S. at 404). Both Scheidler and Sekhar took issue with the fact that the respective defendants had not actually sought to deprive and/or obtain *transferable property*. Here, however, that requirement has been met: Carlson demanded money and medical supplies—items of value.

The question that remains is, does it matter that the place Carlson wished the money to be delivered suggests that she herself was not interested in obtaining the money and supplies? The Second Circuit has reasoned that "far from holding" that Hobbs Act liability requires the extortion of *tangible* property rights, the Supreme Court in Scheidler "simply clarified that for . . . liability to attach, there must be a showing that the defendant did not merely seek to deprive the victim of the property right in question, but also *sought to obtain that right for himself*." United States v. Gotti, 459 F.3d 296, 300 (2d Cir. 2006) (emphasis added). However, the Gotti court went on to suggest that had the protestors in Scheidler attempted to force the abortion clinic to turn over its real property to a "third party of the extortionist's choosing," this action *would* have fit within the Supreme Court's definition of extortion. Id. at 324 n.9.

We agree with the Second Circuit's analysis. In Sekhar and Scheidler, the Supreme Court was concerned with the type of property sought to be extorted, i.e. whether it is *obtainable,* rather than who in the end is doing the actual obtaining. The

jury in the present case was instructed: "To act with intent to extort means to act with the purpose of obtaining money or something of value from someone through wrongful means." The letters sent by Carlson demanded that large sums of money and animal supplies be brought to a certain address, or else the author would follow through on her threats. A reasonable jury could have found that Carlson's letters manifested the requisite intent to extort under 18 U.S.C. § 876(b) and (d).

## B. Meaning of "person"

The three letters at issue on appeal were addressed to: (1) "Target Store Manager" in Count 10; (2) "Valley Buick Pontiac GMC Store Manager" in Count 11; and (3) "Scott Lake Veterinary Center" in Count 12. Carlson asserts that 18 U.S.C. § 876 applies only when threatening letters are mailed to a natural person, not when the addressee is a corporation. The district court removed her proposed jury instruction reflecting this limitation on the definition of "person." "We typically review district courts' rulings concerning contested jury instructions for an abuse of discretion, and we reverse only when any error was prejudicial. However, when our review requires statutory interpretation, it is an issue of law that we consider de novo." United States v. Petrovic, 701 F.3d 849, 858 (8th Cir. 2012) (internal quotations and citations omitted). If we conclude that the district court's interpretation of the statute resulted in the omission of a required element of the offense, "we then apply harmless error review." Preston v. United States, 312 F.3d 959, 960 (8th Cir. 2002).

At trial, the district court discussed the interim jury instructions with the parties in open court without the jury present. The interim instructions contained the following instruction, number 25, which had been adopted from Carlson's proposed instructions:

A written communication is "addressed to another person" if it is addressed to an individual, natural person. "Another person" does not include any firm, association, or corporation.

To identify the addressee of a communication, you are not limited to the directions for delivery on the outside of the envelope or the packaging, but may also consider the salutation and the contents of the communication in determining to whom a communication is addressed.

Over defense counsel's objections, the district court ruled that "person" as used in 18 U.S.C. § 876, referred both to a natural (human) person as well as a corporation. As a result, the court removed instruction number 25 from the final jury instructions. The instructions regarding the required elements of Counts 10, 11, and 12 remained unchanged from the interim instructions. For Count 10, instruction number 21 provided, in part:

In order to sustain its burden of proof for the crime of threatening communications in violation of Title 18, United States Code, Section 876(b), as charged in Count 10 of the Indictment, the prosecution must prove each of the following three elements beyond a reasonable doubt:

*One,* that the defendant knowingly mailed or caused to be mailed a written communication, addressed to "Target – Store Manager";

*Two*, such written communication contained a threat to injure the person of the addressee or of another; and

*Three*, the defendant intended such communication to extort from any person any money or other thing of value.

Jury instruction number 22 was given for Counts 11 and 12 of the indictment. It provided, in part:

In order to sustain its burden of proof for the crime of threatening communications in violation of Title 18, United States Code, Section 876(d), as charged in Counts 11 and 12 of the Indictment, the prosecution must prove each of the following three elements beyond a reasonable doubt:

>*One,* that the defendant knowingly mailed or caused to be mailed a written communication, addressed to the store manager of Valley Buick Pontiac GMC in Count 11 and addressed to the Scott Lake Veterinary Center in Count 12;
>
>*Two*, such written communication contained a threat to injure the property or reputation of the addressee or of another; and
>
>*Three*, the defendant intended such communication to extort from any person any money or other thing of value.

Carlson maintains that the removal of instruction 25, the requirement that the jury find that the threatening communication was addressed to a natural person, was an error. However, the jury was never instructed by the court that a person *could* be a corporation; the court said nothing at all about the definition of "person." What is potentially problematic is that in the first element of instruction 21, the "person of the addressee" in § 876(b) was replaced with "Target – Store Manager." Similarly, in instruction 22, "addressed to any other person" was replaced by "addressed to the store manager of Valley Buick Pontiac GMC" for Count 11, and "addressed to the Scott Lake Veterinary Center" for Count 12. The jury was not asked to determine whether each letter had been addressed to a person, a requirement of the statute. However, the jury *was* asked to determine whether the communication was intended "to extort from *any person*" something of value. (Emphasis added). In all three counts the jury found that this element had been satisfied, and that Carlson had intended to extort from a person.

This court has never addressed whether 18 U.S.C. § 876 applies strictly to natural persons, though several other circuit courts have, and those courts have reached varying conclusions. In <u>United States v. Bly</u>, 510 F.3d 453 (4th Cir. 2007), the Fourth Circuit ruled that the term "person" in section 876(b) could apply to the University of Virginia. The court explained that "under ordinary usage, the term 'person' is defined as 'a human being, a body of persons, or a corporation, partnership, or other legal entity that is recognized by law as the subject of rights and

duties.'" Bly, 510 F.3d at 461 (quoting Webster's Dictionary 1686 (3d ed. 2002)). Further, "it is entirely reasonable to conclude that an artificial entity, such as UVA, can be the victim of an extortion demand." Id.

The Ninth Circuit, sitting en banc, analyzed the term "person" as it appeared in 18 U.S.C. § 876(c), which prohibits the mailing of a communication "addressed to any other person and containing any threat to kidnap any person or any threat to injure the person of the addressee or of another." The court held that "§ 876(c) refers exclusively to an individual, or to a natural, person." United States v. Havelock, 664 F.3d 1284, 1286 (9th Cir. 2012) (en banc). While § 876(c) is not targeted at extortion like the subsections in the present case, in reaching its decision, the Ninth Circuit analyzed the whole of 18 U.S.C. § 876:

> The term "person" is used no less than twelve times in § 876. See 18 U.S.C. § 876. The term is used in various associations, including: "release of any kidnapped person," "any threat to kidnap any person or any threat to injure the person of the addressee or of another," "the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime." See id. These associations clearly require that "person" mean a *natural* person. It simply makes no sense to threaten to kidnap a corporation, or injure "the person" of a corporation, or talk about a deceased corporation.

Havelock, 664 F.3d at 1291.

Citing the "common-sense and long-recognized presumption of uniformity" in statutory interpretation, the Ninth Circuit determined that because it had identified many instances in which person *must* mean a natural person, it therefore meant this in all instances throughout the statute. Id. (citing Brown v. Gardner, 513 U.S. 115, 118 (1994)). This includes when it is used in the phrase "addressed to any other person," as it is in § 876(a),(c), and (d). This contrasts with the Fourth Circuit's conclusion, that the rule of uniform usage does not apply when "a statutory term has

-10-

multiple commonly understood and accepted meanings, among which a speaker may alternate without confusion." Bly, 510 F.3d at 461.

In United States v. Williams, the Tenth Circuit considered whether a "person" under § 876 could include a government official, addressed in a threatening letter by his title. 376 F.3d 1048 (10th Cir. 2004). The court noted that the Seventh Circuit had found that "at least one of the purposes of § 876 is 'the preservation of the recipient's sense of personal safety.'" Id. at 1053 (quoting United States v. Aman, 31 F.3d 550, 555 (7th Cir. 1994)). The court thus concluded that this purpose requires that the "person" to whom the communication was addressed "must be capable of having a sense of personal safety," i.e. must be a natural person. Id.

Two years after Congress passed 18 U.S.C. § 876, it passed a very similar companion statute pertaining to threats transmitted by means of interstate commerce other than the mail, 18 U.S.C. § 875. Subsections (b) and (d) of § 875 begin, "Whoever, with intent to extort from any person, *firm, association, or corporation*, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat . . . ." (Emphasis added). The government argues that these additional terms manifest Congress's "intent to protect non-natural persons from extortion demands" and that the reason Congress did not include these terms in § 876 two years earlier was because it would have been "superfluous." Yet, why would Congress have initially thought the terms superfluous and then two years later decide that they were not? One could just as easily compare the two statutes and conclude that because Congress expressly included corporations in the later statute, it meant to exclude them in the earlier one.

We are inclined to agree with the Ninth Circuit that the context in which the term "person" is used in § 876 requires it to be a natural person, and the inclusion of the term "corporation" in § 875 serves only to convince us further. We conclude that 18 U.S.C. § 876 requires the intent to extort from a natural person, a fact which must

be determined by a jury in order to reach a conviction. Therefore, the district court erred when it gave a jury instruction that removed this question from the jury and reduced the first element of Counts 10 through 12 to a presumption that would be satisfied so long as the jury found that Carlson had sent a letter to each of the named entities.

We next turn to whether this error was harmless. "A jury instruction that omits a single element of the offense can be subject to harmless error review." United States v. Evans, 272 F.3d 1069, 1081 (8th Cir. 2001) (citing Neder, 527 U.S. at 8–9). A constitutional error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Neder, 527 U.S. at 15 (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). The court asks "whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element." Id. at 19.

As an initial matter, we conclude that Carlson's argument fails in regard to Counts 10 and 11, and that any error in these jury instructions was harmless. The jury found that the respective threatening letters had been mailed to "Target–Store Manager" in Count 10, and "store manager of Valley Buick Pontiac GMC" in Count 11. This use of titles is similar to the circumstances in United States v. Davila, 461 F.3d 298 (2d Cir. 2006). There, the threatening letter in question purported to contain anthrax and was addressed to the "Connecticut State's Attorney's Office." Davila, 461 F.3d at 308. The court held that this language satisfied the natural person requirement of § 876 because "the Connecticut State's Attorney is a person." Id. Similarly, here we think that no reasonable jury could conclude that the store managers of a car dealership or of a Target are not persons as required by § 876(b) and (d). With respect to these two counts, the verdicts reached were unaffected by the error.

The letter at issue in Count 12, addressed to "Scott Lake Veterinary Center" is more ambiguous. We join the Ninth Circuit in embracing the idea that in determining to whom a threatening letter was addressed, "a court is not limited to the directions for delivery on the outside of the envelope or on the packaging, but also may look to the content of the communication," as well as any salutation line. Havelock, 664 F.3d at 1286, 1296. The Tenth Circuit has similarly held that "at a minimum, the envelope and the salutation of a letter can both be considered in determining whether a communication is 'addressed to any other person'" and has noted that the "word 'communication' includes the contents of a letter." Williams, 376 F.3d at 1052–53. While a Veterinary Center is clearly not a natural person, the question is whether the threat contained in the letter *as a whole* was addressed to a person.

The District of Nebraska considered a case in which the defendant had mailed an envelope containing white powder to "United of Omaha Life Insurance Processing Dept. United States v. Naylor, No. 8:12-CR-378, 2013 WL 1867064 (D. Neb. May 3, 2013). The court concluded that it did not need to reach the issue of whether "§ 876(c) only prohibits threats addressed to natural persons," because the contents of the letter made "clear that any threat was addressed to whichever Mutual of Omaha employee had the misfortune to open the letter." Id. at *2. The court reasoned that a person opening the letter would "experience fear or apprehension for their immediate well-being," an effect that could only be intended for, and inflicted on, a natural person. Id.

Even if the Naylor court's reasoning is persuasive, it is not obviously applicable to the letter sent to the Veterinary Center. Though an envelope of white powder is clearly intended to frighten a human being (a corporation cannot be poisoned), id., the letter addressed to the clinic threatened damage to the reputation of the hospital itself: "I am going to get the word out there that your hospital & others overcharge people . . . ."

-13-

It is possible that the jury interpreted the letter as a threat to the owner, or the manager, of the Veterinary Center because it referred to "your hospital" and instructed the reader to "bring" supplies—an activity that could be undertaken by only a flesh-and-blood person. Indeed, the jury found that the letter to the clinic was intended to "extort from any *person* any money or other thing of value," the third element of Count 12. It is also possible, however, that the jury assumed that the clinic itself could be considered a person under the statute as the defense attorney had not argued otherwise during the course of the trial (and could not have because he had been prohibited from doing so by the district court). As noted by the Fourth Circuit, Webster's Dictionary includes the word "corporation" in one of its definitions of "person." Bly, 510 F.3d at 461 (citing Webster's Dictionary 1686 (3d ed. 2002)).[1] Indeed, the concept of corporate personhood has been a matter of recent public discourse. There was no way for the jury to determine, having not been provided with the entirety of the text of 18 U.S.C. § 876, that the statute's context implied that "person" could not be a corporation. We cannot determine based on the record which line of reasoning the jury took in reaching its verdict.[2]

---

[1]The Dictionary Act itself provides that "[i]n determining the meaning of an Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, [etc.,] as well as individuals." 1 U.S.C. § 1.

[2]Contrary to the dissent's mischaracterization, we are not concluding that Carlson's letter was not addressed to a natural person; in fact we acknowledge that a jury could reasonably conclude that it was. We are instead saying that the record does not allow us to know one way or the other whether the jury actually found each required element of the offense to be satisfied. As catalogued above, courts have consistently held that the context and contents of a letter may be used in determining whether the letter was intended for a person, even if the salutation itself lists only a corporation. For this reason we think our ruling applies to a smaller subset of 18 U.S.C. § 876 cases than the dissent threatens. There will be some letters that fall outside the reach of 18 U.S.C. § 876 because a jury concludes they were addressed

-14-

By ruling that 18 U.S.C. § 876 could be satisfied by letters addressed to corporations, the district court removed this discussion from the trial. If interim jury instruction 25 had not been improperly removed, we cannot say beyond a reasonable doubt that the jury would have reached the same conclusion in element three of Count 12—that the letter was intended to extort from a person. Thus, we also cannot predict whether the jury would have found the first requirement of Count 12—that the letter had been addressed to a person—satisfied either. We think that the "record contains evidence that could rationally lead to a contrary finding with respect to [this] omitted element," Neder, 527 U.S. at 19, i.e., a jury could rationally conclude that Carlson's letter to the Veterinary Center was addressed to a corporation rather than a natural person. Following its examination of the record, if "the court cannot conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error—for example, where the defendant contested the omitted element and raised evidence sufficient to support a contrary finding—it should not find the error harmless." Id. We therefore conclude that, with respect to Count 12 only, the jury-instruction error was not harmless.

## III. Conclusion

For the reasons discussed above, we affirm Carlson's convictions under Counts 10 and 11. We vacate her conviction on Count 12 and remand to the district court for further proceedings.

---

to a corporation, but we do not think this is an absurd result, nor contrary to the statute's purpose. See United States v. Manning, 923 F.2d 83, 86 (8th Cir. 1991) (the "true gravamen" of an offense under § 876 is the threat which disrupts "the recipient's sense of personal safety and well-being").

LOKEN, Circuit Judge, concurring in part and dissenting in part.

I concur in the court's decision to affirm Deborah Carlson's conviction on Counts 10 and 11. I respectfully dissent from the decision to vacate her conviction on Count 12. Relying on the Ninth Circuit's decision in United States v. Havelock, 664 F.3d 1284 (9th Cir. 2012) (en banc), the court concludes that the term "addressed to any other person" in 18 U.S.C. § 876(d) is limited to natural persons and therefore did not include the threat Carlson mailed to the Scott Lake Veterinary Center. I disagree and would therefore affirm the judgment of the district court.

The Count 12 issue turns on the proper application of the Dictionary Act, 1 U.S.C. § 1, which provides that the word "person" in a statute includes corporations, companies, and other institutional entities, as well as natural persons, "unless the context indicates otherwise." In Rowland v. California Men's Colony, 506 U.S. 194, 199-200 (1993), a divided Supreme Court construed "context" in this proviso as meaning the text of the statute at issue and other related acts, and "indicates" as a term "excusing the court from forcing a square peg into a round hole." In declining to apply the Dictionary Act in that case, the majority acknowledged that it must be applied if "the statutes in question manifest[] a purpose that would be substantially frustrated if we did not construe the statute to reach artificial entities." Id. at 210-11. I conclude that is precisely the situation we face here, as a short foray into history the Ninth Circuit overlooked or ignored in Havelock makes clear.

The precursor to § 876 was first enacted in 1932, largely in reaction to the brutal and notorious kidnaping and murder of Charles Lindbergh's infant son. See Horace Bomar, The Lindbergh Law, 1 Law & Contemp. Problems 435, 435-38 (1934). The initial statute covered the same ground as § 876(a)-(d), but was more simply worded:

> [W]hoever, with intent to extort from any person any money or other thing of value, shall knowingly deposit or cause to be deposited in any post office . . . any written or printed letter or other communication . . . addressed to any other person, and containing any threat (1) to injure the person, property, or reputation of the addressee or of another or the reputation of a deceased person, or (2) to kidnap any person, or (3) to accuse the addressee or any other person of a crime, or containing any demand or request for ransom or reward for the release of any kidnaped person, shall be fined not more than $5,000 or imprisoned not more than twenty years, or both.

Act of Jul. 8, 1932, Pub. L. No. 274, 47 Stat. 649.  As explained by its sponsor, an amendment that added the "containing any demand or request for ransom" provision "simply makes it an offense to deposit in the mails a demand for ransom for a kidnapped person."  75 Cong. Rec. 8852 (1932) (remarks of Sen. Patterson); see 75 Cong. Rec. 13,284 (remarks of Rep. Cochran) (a purpose of the bill "was to amend the postal laws so as to make it a felony to use the mails to demand ransom where a person had been kidnaped").  Nothing in these remarks intimates that a ransom demand would be unlawful only if  mailed to a natural person; quite the contrary seems clearly intended.  Yet by construing "person" to mean only natural persons all twelve times the word now appears in the more elaborate subsections of § 876, the Ninth Circuit and now this court hold that the statute applied to a demand for ransom addressed to Charles Lindbergh, but not to the same demand addressed to Lindbergh's employer, or to his church, or to any other "non-natural" person.  In my view, nothing could more substantially frustrate the manifest purpose of this statute.  Moreover, because the Dictionary Act in substantially its present form was part of the United States Code in 1932, this restrictive interpretation of "person" in § 876 is contrary to the plain language of the initial statute.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 688-89 (1978), quoting Act of Feb. 25, 1871, § 2, 16 Stat. 431.

The Ninth Circuit, and now this court, avoid a reasoned application of the Dictionary Act to § 876 by sheer judicial legerdemain. The twelve uses of "person" in § 876 include uses that obviously refer to natural persons -- "the release of any kidnapped person" in § 876(a), the threat to "kidnap" or "injure" a person in §§ 876(b)-(d), and "the reputation of a deceased person" in § 876(d). Therefore, the Ninth Circuit majority reasoned, "the common-sense and long-recognized presumption of uniformity counsels that 'person' means a natural person in 'addressed to any other person' as well." Havelock, 664 F.3d at 1291. For authority, the court cited only Brown v. Gardner, 513 U.S. 115, 118 (1994). In Brown, the Court did note "a presumption that a given term is used to mean the same thing throughout a statute." But it cited only Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433 (1932), a case decided less than two months before the predecessor to § 876 was enacted. In Atlantic Cleaners, the Court held that the words "trade or commerce" did *not* have the same meaning in sections 1 and 3 of the Sherman Act, explaining:

> Most words have different shades of meaning and consequently may be variously construed, not only when they occur in different statutes, but when used more than once in the same statute or even in the same section. Undoubtedly, there is a natural presumption that identical words used in different parts of the same act are intended to have the same meaning. But the presumption is not rigid and readily yields whenever there is such variation in the connection in which the words are used as reasonably to warrant the conclusion that they were employed in different parts of the act with different intent.

> * * * * *

> It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving to the word the meaning which the legislature intended it should have in each instance.

-18-

Id. at 433 (citations omitted).  The Court's *decision* in Brown was not to the contrary, and Atlantic Cleaners was construed and applied as written in General Dynamics Land Systems, Inc. v. Cline, 540 U.S. 581, 595-96 (2004), and cases cited.

Applying these principles, I would apply the Dictionary Act to § 876 consistent with the Fourth Circuit's interpretation of § 876(b) in United States v. Bly, 510 F.3d 453, 460-61 (4th Cir. 2007), and 467 (Motz, J., concurring),[3] and with the concurring opinion in Havelock, 664 F.3d at 1297-1302 (Smith, J., concurring):  when any subsection uses the word "person" in a way that can apply only to natural persons, such as kidnaped person, injured person, or deceased person, then the context obviously indicates that the broader Dictionary Act definition does not apply.  But when "person" is used more broadly, such as "intent to extort from any person" or "addressed to any other person," then the manifest purpose of the statute is obviously served by applying the Dictionary Act definition to that specific use, and it must be assumed that Congress so intended.

The court's strained and textually illogical contrary interpretation of § 876 produces results that can only be labeled absurd.  For example, a letter mailed to an employer threatening to kidnap one of its drivers or blow up a facility when employees are present unless a ransom is paid will not violate the statute because the threat to kidnap or injure a natural person was not addressed to a natural person.  I conclude this is contrary to the plain meaning and obvious purpose of the statute and therefore respectfully dissent.

---

[3]An additional issue in Bly was whether the statute applied to a threat to injure persons mailed to the University of Virginia, a governmental entity.